# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# CENTRAL DIVISION

| | |
|---|---|
| ROBERT S. KLINGELE, )<br>)<br>        Plaintiff, )<br>    v. )<br>)<br>MICHAEL J. ASTRUE, )<br>COMMISSIONER OF )<br>SOCIAL SECURITY, )<br>        Defendant. ) | Civil Action<br>No. 10-4026-CV-C-JCE-SSA |

## ORDER

Before the Court are Plaintiff's brief in support of his claim and Defendant's brief in support of the administrative decision. The case involves the appeal of the final decision of the Secretary denying plaintiff's application for disability benefits under Title II of the Act, 42 U.S.C. §401 et seq. and application for supplemental security income under Title XVI of the Act, 42 U.S.C. § 1381. Pursuant to 42 U.S.C.§ 405(g), this Court may review the final decision of the Secretary. For the reasons stated herein, the decision of the Secretary will be affirmed.

Standard of Review

Judicial review of disability determination is limited to whether there is substantial evidence in the record as a whole to support the Secretary's decision. 42 U.S.C. § 405(g); e.g., Rappoport v. Sullivan, 942 F.2d 1320, 1322 (8th Cir. 1991). Substantial evidence is "'such evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. V. NLRB, 305 U.S. 197, 229 (1938)). Thus, if it is possible to draw two inconsistent positions from the evidence and one position represents the Agency's findings, the Court must affirm the decision. Robinson v.

Sullivan, 956 F.2d 836, 838 (8th Cir. 1992).

In hearings arising out of an application for benefits, the claimant has the initial burden of establishing the existence of a disability as defined by 42 U.S.C. §§ 423(d)(1). Wiseman v. Sullivan, 905 F.2d 1153, 1156 (8th Cir. 1990). In order to meet this burden, the claimant must show a medically determinable physical or mental impairment that will last for at least twelve months, an inability to engage in substantial gainful activity, and that this inability results from the impairment. Id. A disabling impairment is one which precludes engaging "in any substantial gainful activity [for at least twelve months] by reason of any medically determinable physical or mental impairment." 42 U.S.C. § 423(d)(1)(A). A finding of "not disabled" will be made if a claimant does not "have any impairment or combination of impairments which significantly limit [the claimant's] physical or mental ability to do basic work activities. . . ." 20 C.F.R. § 404.1520©.

The standard by which the ALJ must examine the plaintiff's subjective complaints of pain is well settled. The ALJ must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as the claimant's daily activities, the duration and frequency of pain, precipitating and aggravating factors, dosage and effects of medication, and functional restrictions. Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984).

When rejecting a claimant's subjective complaints, the ALJ must give full consideration to all of the relevant evidence on the Polaski factors and may not discredit subjective complaints unless they are inconsistent with the evidence in the record as a whole. Haynes v. Shalala, 26 F.3d 812, 814 (8th Cir. 1994).

Discussion

Plaintiff was 41 years old at the time of the hearing before the ALJ. He alleges that he is unable to work because of bipolar disorder. He has a high school education. His past relevant work includes that of tile layer, building maintenance worker, and assembly line work.

At the administrative hearing, plaintiff testified that he lives with his mother and last worked about four years previously. He had worked on an assembly line for 10-15 years. He stated that he was using cocaine on the job, and because of a serious cocaine problem, had three periods of incarceration. It was his testimony that he has memory problems. He goes to Alcoholics Anonymous ["AA"] meetings, goes to classes, and works on sobriety. He stated that he cannot work because he is bipolar, forgetful, and totally nervous. He has manic phases where he acts without thinking. Plaintiff testified that he does take medication for the bipolar condition, but he has some side effects, like a small seizure with the most recent medication. This causes him to have balance problems. He has suffered from diabetes and cardiac problems, which are under control with medication. He exercises by walking about three times a week. He stated that he has not used cocaine in over a year, but that it takes a lot for him to maintain sobriety; he goes to AA meetings about three times a week. He has moved and sees a new doctor about every two months, and is looking for other services, such as after care through AA. He tries to help his mother around the house, and surround himself with positive influences. He stated that his memory problem causes him to forget what he is doing. He might have a manic phase that lasts as long as a couple of months. During such a phase, he is hyperactive, and might do something like repeatedly move furniture, until the point that his family complains about it. He thought the Depakote was helping with this. He also gets depressed. When this happens, he sleeps a lot, has no ambition, and does not want to do anything. That might last a couple of weeks. Medication

helps to keep him pretty level.  He still manages to go to AA meetings sometimes when he is depressed. He also suffers, as a result from medication, with dry mouth and gaining weight.  When he is in a manic phase, he doesn't deal with people very well; his temper gets in the way, and he gets into more conflicts.  When he is depressed, he tends to ignore people, including his mother, and she has to remind him to take his medication and go to appointments.  He has trouble sleeping on occasion, and takes medication for that.

  Plaintiff's mother also testified.  It was her testimony that her son had had a pretty significant drug problem over the years.  He has been living with her since 2007 when he was released from incarceration.  He went into a treatment program after he got out of prison, and has quit using drugs.  She testified, regarding his mental health problems, that he has manic and depressive states.  Both cause problems for him with other people, in that he's difficult to deal with when he is manic, and very sad and wants to stay away from people when he is in a depressed state.  She said that he is either one extreme or the other, and both are hard to take because when he is depressed, he just stays in bed and won't shave or shower; when he is manic, he is too talkative and wants to do things and fix things all the time.  She stated that his medication helped somewhat.  But, when he was recently placed on Abilify, he had extreme problems with muscle jerks and could not take the medicine.  Other medicine that he has taken, such as Paxil, worked, but then depression might start up.  How long each phase lasts varies most of the time.  Plaintiff's mother testified that she knows her son is not using drugs because she insisted on this and she knows where he is.  They get out to church and to go grocery shopping, and he goes to AA meetings when he is up to it.  She described his extreme forgetfulness with things like leaving water running, and leaving lights on and cabinet doors open.  She testified that she has to keep an eye on him all the time, but it seems that his mind

doesn't work right, and this seems to be worsening. She wishes he could work, but does not think he could, and believes he needs her help. She has to remind him to take his medication. She did not think he could work because he forgets what he is doing, and doesn't do as good a job as he used to. He is easily distracted and cannot focus.

On re-examination, plaintiff testified that he thinks he needs his mother's help at this time. He does not believe he could go to work every day.

The ALJ found that plaintiff had not engaged in substantial gainful activity since February 7, 2007, the alleged onset date. He concluded that plaintiff was not fully credible. It was his finding that plaintiff has severe impairments of "bipolar I disorder, restrictive lung disease in part due to obesity, diabetes, and history of substance abuse." [Tr. 54.]. He concluded that plaintiff did not have an impairment or combination of impairments that met or equaled a listed impairment. Specifically, he determined that plaintiff had no restrictions in daily living; moderate difficulties in social functioning; mild difficulties with regard to concentration, persistence or pace; and has experienced no episodes of decompensation. It was his finding that plaintiff could not perform his past relevant work, but that he had the Residual Functional Capacity ["RFC"] to perform light work with restrictions. The ALJ concluded that plaintiff would have additional nonexertional limitations in that he would be restricted to no more than frequent balancing, and would need to avoid concentrated exposure to pulmonary irritants and industrial hazards/unprotected heights. The ALJ also found that because of plaintiff's mental impairment, he would need to be limited to work involving only simple tasks, which would require no more than occasional contact with the public and co-workers. Therefore, the ALJ found that plaintiff was not under a disability as defined by the Act.

According to the testimony of the vocational expert, plaintiff could not perform his past

relevant work, but with the limitations delineated above, he could perform light work with some exertional and mental limitations. Available jobs include light housekeeping, mail sorting or mail clerk, and some bench assembly work.

Plaintiff contends that the ALJ erred in failing to afford appropriate and controlling weight to the opinion of the treating physician, Dr. Beitman; erred in his credibility finding in terms of plaintiff's mother's testimony; and erred in his RFC finding. Plaintiff asserts that the ALJ erred because he did not consider the opinion of a treating physician that he had severe mental impairments; did not consider that he had been assessed with a GAF of 45-50; did not consider that, by its nature, bipolar disorder causes some sufferers to be non-compliant with medication; did not consider that one doctor recommended that plaintiff's mother apply for guardianship of him because he was not able to care for himself; and failed to take into consideration plaintiff's mother's testimony regarding his degree of mental impairment.

It is defendant's position that Dr. Beitman was not a treating physician because he had only seen plaintiff two or three times before giving his opinion in the Medical Source Statement-Mental ["MSSM"]. Therefore, it is asserted that it was not error to not have given his opinion controlling weight. Additionally, defendant asserts that during the relevant time period, plaintiff was stable on medication. Further, it is submitted that the ALJ did consider plaintiff's mother's testimony, and it is not error to have found her not entirely credible for the same reasons he discredited plaintiff. It was noted that plaintiff's mother supported the finding that he was fairly stable on medication.

The medical records in this case reflect that plaintiff has received mental health treatment for a number of years, including while incarcerated, and has received ongoing outpatient treatment for mental health problems since he has been out of prison. He has also received

medical treatment for several physical conditions, which are not at issue in this case. The mental health treatment records, primarily from Dr. Purohit, who has treated plaintiff since as early as 2002, indicate that he has been diagnosed with bipolar I disorder, impulse control disorder, and general anxiety disorder. At the time that he was first released from prison and saw Dr. Purohit in February of 2007, he was assessed with a GAF of 45-50. During visits with Dr. Purohit thereafter, the medical records indicate that when plaintiff took his medication on a regular basis, he was relatively stable. Throughout the treatment notes, the doctor observed that plaintiff was alert, did not have suicidal ideation, and although at times experienced anxiety, he was redirectable. The medical records from Dr. Purohit do indicate that plaintiff suffered from side effects from some medications, and that his medications were frequently adjusted. On several visits, plaintiff complained of depression, but the doctor concluded that he did not have objective signs or symptoms of depression. In January of 2008, after plaintiff had been in jail for 30 days for shoplifting, the doctor encouraged his mother to file for guardianship "so that his symptoms can be monitored adequately and appropriate steps can be taken before the patient gets into the impulsive behavior." [Tr. 667]. Dr. Purohit continued to see plaintiff throughout that year, and in November of 2008, his treatment records indicate that plaintiff was calmer at times, and was relatively stable. Various adjustments and changes were made to his medication throughout this period. Plaintiff then moved from the area, and began seeing Dr. Beitman. Dr. Beitman only saw him two or three times in early 2009, right before the hearing with the ALJ. In the MSSM, Dr. Beitman found plaintiff to have only limited ability to perform many work-related functions. He found that he had poor or no ability in over half of the categories and fair abilities in the other categories.

       The ALJ did not afford considerable weight to this opinion, however, finding that the

assessment "appears to have been based solely on the claimant's subjective reports rather than on clinical findings." [Tr. 60]. The ALJ stated that "Dr. Purohit treated the claimant over a much longer period, and . . . indicated that the claimant was stable when compliant with treatment. For these reasons, I do no accord much weight to the opinion of Dr. Beitman." [Tr. 61].

After careful review, the Court finds that there is substantial evidence in the record as a whole to support the ALJ's decision not to give controlling weight to Dr. Beitman's MSSM. The ALJ may reject the opinion of any medical expert if it is inconsistent with the medical record as a whole. See Bentley v. Shalala, 52 F.3d 784, 787 (8th Cir. 1995). Additionally, the ALJ may, among other factors, rely on the length of the treatment relationship and the frequency of examination, and the nature and extent of the treatment relationship, in determining the weight to be given to a treating source's opinion. 20 C.F.R. §§ 404.1527(d), 416.927(d). In this case, it appears that Dr. Beitman had a very brief doctor-patient relationship with plaintiff before he prepared the MSSM. Additionally, in Dr. Beitman's medical source statement, he rated plaintiff as having poor or no ability in over half of the categories and fair abilities in the other categories. His treatment notes indicate, however, that plaintiff reported that medication helped to stabilize him. Also in his notes, the doctor observed that, although he had abnormal memory, he was pleasant, cooperative, in an euthymic mood, had logical thought flow, and had fair insight, judgment, concentration and attention. Shortly thereafter, the doctor noted plaintiff's statement that he was irritable and wasn't taking care of himself, but observed that plaintiff was "actively engaged, trying to find a way to be helped." [Tr. 627]. The doctor opined that he might make some changes in plaintiff's medications and encouraged him to resume attendance at AA meetings. In records later submitted to the Appeals Council, Dr. Beitman observed that plaintiff's mother reported that he was happier, doing things, and more pleasant.

To the extent that the record contains conflicting evidence concerning the severity of plaintiff's mental limitations, it is the ALJ's role to weigh the conflicting medical evidence and resolve the conflicts. See Richardson v. Perales, 402 U.S. 389, 399 (1971) ("We ... are presented with the not uncommon situation of conflicting medical evidence. The trier of fact has the duty to resolve that conflict."). Based on the record as a whole, the Court concludes that the Dr. Beitman's ratings were internally inconsistent and conflicted with the rest of the record, which supports a finding of moderate symptoms. The ALJ is warranted in discrediting a treating physician's opinion that is inconsistent with other evidence in the record or is unsupported by medically acceptable clinical and laboratory diagnostic techniques. The ALJ provided good reasons to afford only little weight to Dr. Beitman's opinion.

Plaintiff argues that even if the ALJ did not give great weight to the opinion of Dr. Beitman, he should have considered the opinion of Dr. Purohit regarding the need for guardianship, and should have noted the fact that plaintiff did suffer side effects from various medications. The Court has carefully reviewed the record on this issue. In 2008, after plaintiff had spent 30 days in jail for shoplifting, Dr. Purohit made the guardianship recommendation as a possible way to anticipate plaintiff's impulsive behavior. From January until November, there was not another mention of the guardianship issue, although Dr. Purohit continued to see plaintiff regularly. Eventually, plaintiff and his mother moved to get away from bad influences. It appears that if Dr. Purohit had a serious concern about plaintiff needing a guardian, this subject would have been brought up again. Rather, his treatment notes indicate that plaintiff's condition remained relatively stable, and there is no indication that he engaged in impulsive criminal behavior during that time period. Therefore, it cannot be said that the ALJ erred in not giving controlling weight to the one reference to guardianship. Additionally, it is true that the

record reflects various medication side effects, but for the most part, the side effects were ameliorated by changes in medication, and did not appear to be serious. Neither plaintiff nor his mother testified about serious side effects, with the exception of the muscle jerks/seizure caused by one medication, which was quickly changed, and another, one-time serious reaction. Although plaintiff mentioned dry mouth and weight gain, these are not atypical or serious side effects from medication. Based on a full review of the record, the Court that there is substantial evidence in the record as a whole to support the ALJ's decision that plaintiff's mental impairments were not disabling, but rather, that his condition was treatable and he was stable with medication.

Plaintiff also contends that the ALJ formulated the RFC without any medical support for doing so. Although the RFC finding is a part of the medical portion of a disability adjudication, an ALJ has the duty to formulate the RFC based on all the relevant, credible evidence of record, including testimony, and not rely just on medical opinion evidence. See McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000) (the Commissioner must determine a claimant's RFC based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations). The ALJ is neither required nor permitted to formulate plaintiff's residual functional capacity based solely on a single medical opinion, but instead is bound to make that determination based on the record as a whole. Id. at 863.

In this case, the ALJ considered the full record evidence from the relevant time period, including the treatment notes, medical opinions and assessments, and plaintiff's own testimony. A review of the record indicates that the ALJ properly considered all of plaintiff's impairments in assessing the RFC. A review of the RFC, which delineates functional and nonfunctional

limitations, indicates that the ALJ took into consideration the credible, medically supported evidence in the record to assess plaintiff's RFC, and considered his severe impairments in the RFC finding. The Court finds that there is substantial evidence in the record as a whole to support the ALJ's finding regarding plaintiff's RFC. When finding that plaintiff could perform a limited range of light work, the ALJ included the limitations he found credible, including some physical restrictions and restrictions based on his mental impairment. It was his finding that plaintiff would be limited to work involving only simple tasks, which would require no more than occasional contact with the public and co-workers. The ALJ also relied on the opinion of a vocational expert in reaching the conclusion that there were jobs in the national economy in this category, which plaintiff could perform. Substantial evidence in the record supports the ALJ's RFC finding.

Plaintiff's argument that the ALJ committed reversible error by failing to discuss the lay testimony of his mother is without merit. He acknowledged that the ALJ discussed the mother's testimony, but asserts that he never discredited her statements. An arguable deficiency in opinion writing clearly does not constitute reversible error. Given the record as a whole, the Court finds that the ALJ conducted a proper credibility analysis under Polaski. The ALJ found that plaintiff's subjective complaints were not entirely credible. The law is clear that "[t]he credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." Homstrom v. Massanari, 270 F.3d 715, 721 (8th Cir. 2001). The ALJ conducted a full credibility finding in terms of plaintiff's credibility, and found that he was not fully credible, based in part on his prior work history, and the level of his daily activities. Plaintiff's mother's testimony was essentially the same regarding plaintiff's daily activities, his response to medication, and the few side effects he experienced. Basically, she acknowledged, as did

plaintiff, that although he had problems with manic and depressive states, medication helped control these, and they were both committed to helping him remain stable. The Court finds that there is substantial evidence to support the ALJ's credibility determination.

Based on the record before it, the Court finds that the ALJ's decision that plaintiff could perform a limited range of light work is adequately supported by substantial evidence in the record. <u>Dukes v. Barnhart</u>, 436 F.3d 923, 928 (8th Cir. 2006). Accordingly, the decision of the Secretary should be affirmed.

It is therefore

ORDERED that the decision of the Secretary be, and it is hereby, affirmed.

       /s/ James C. England
JAMES C. ENGLAND
United States Magistrate Judge

Date: 3/4/11